UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| BEN A. CAVIL, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 3:12-CV-324 |
| § | |
| OCWEN LOAN SERVICING LLC, *et* § | |
| *al*, § | |
| § | |
| Defendants. § | |

# MEMORANDUM AND ORDER

In 2010, Plaintiff Ben Cavil filed suit in this Court against six defendants challenging the foreclosure sale of his home in League City, Texas. In January 2012, the Court granted summary judgment against Cavil on all claims, and the Fifth Circuit later dismissed Cavil's appeal for failure to timely file his brief.

Unhappy with the outcome of that case, Cavil returns with a new lawsuit again challenging the foreclosure. This second lawsuit names four Defendants, three of whom Cavil targeted the first time. Because res judicata prevents the "do over" Cavil is attempting, the prior judgment precludes him from proceeding against the three repeat defendants. With respect to the fourth defendant, the Court finds that Cavil has failed to state a viable claim. As discussed further below, Defendants' motions to dismiss are therefore **GRANTED**, Cavil's request for leave to amend his state court

1

petition is **DENIED**, and Cavil's suit is **DISMISSED WITH PREJUDICE**.

## I. BACKGROUND

Cavil purchased his waterfront League City home (the "Property") in February 2007, with the help of two mortgage loans totaling $541,000 from New Century Mortgage Corporation. Eventually, Cavil defaulted on his mortgage payments and requested a loan modification from his servicer at the time, Saxon Mortgage Service, Inc. Cavil received a modification but almost immediately defaulted on his new payments. In December 2009, Saxon denied his request for a second modification and initiated foreclosure proceedings on the first mortgage loan. In January 2010, the home was sold at a foreclosure sale for $340,000 to a trust (the "FV-1 Trust"[1]) held for the benefit of a Morgan Stanley subsidiary.

Cavil then filed his first lawsuit. *See Cavil v. Trendmaker Homes, Inc.*, No. G-10-304, 2012 WL 170751, at *1 (S.D. Tex. Jan. 19, 2012), *appeal dismissed* No. 12-40195 (5th Cir. May 10, 2012). That litigation concluded in May 2012 when the Fifth Circuit dismissed the appeal. After

---

[1] As in many foreclosure cases, the exact identity of the trust is unclear. It refers to itself as a Deutsch Bank entity. *See* Docket Entry No. 6 at 1–2. Nonetheless, the Court will refer to it as the "FV-1 Trust" since it appears as such in the Galveston County appraisal records and Defendants' counsel referred to it as "FV-1" at the December 12 hearing.

the dismissal, the FV-1 Trust initiated a forcible detainer action in state court against Cavil, who had remained in possession of the Property.

On October 25, 2012, after the state court had entered a default judgment in favor of the FV-1 Trust in the forcible detainer action, Cavil filed this suit in state court. Defendants promptly removed to this Court. Cavil brings a variety of claims against four defendants: Ocwen Loan Servicing LLC, Specialized Loan Servicing LLC, the FV-1 Trust, and Morgan Stanley Mortgage Capital Holdings, LLC. He also attempts to bring suit against "John Doe," apparently a collective term for all unidentified parties that Cavil might wish to sue in the future. Docket Entry No. 1-3 at 4.

Defendants' relationships to one another and to Saxon are unclear from the briefing. However, the Court's order granting summary judgment in Cavil's first suit and documents attached to Cavil's complaint in this case reveal that Saxon transferred the second mortgage loan to Defendant Ocwen in 2009 and transferred the first mortgage loan to Defendant Specialized in January 2012. *See Cavil*, 2012 WL 170751, at *5 n.11 (stating that the undisputed evidence showed that the second mortgage loan was transferred to Ocwen); Docket Entry No. 1-3 at 17–19 (showing that Saxon stopped and Specialized began servicing the first loan in January 2012, and noting a transfer to Specialized). The parties' roles in this case are thus as follows:

3

the FV-1 Trust owns the Property, which it bought at the January 2010 foreclosure sale. Specialized and Ocwen service the first and second mortgage loans, respectively, as successors-in-interest to Saxon. Morgan Stanley Mortgage Capital Holdings, LLC is the investor on the loans but has no other interest in the Property. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (noting that courts reviewing motions to dismiss may rely on "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." (quotation and citation omitted)); *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." (citation omitted)).

On November 9, Ocwen and the FV-1 Trust filed a motion to dismiss pursuant to Rule 12(b)(6). Specialized and Morgan Stanley filed their own motion to dismiss on November 19. Cavil failed to timely respond to either motion but eventually submitted a response mere hours before the Court held a scheduling conference in this case on December 12.

## II.    STANDARD OF REVIEW

For most claims, the Federal Rules require that a claim for relief contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a heightened

4

standard is required for those claims involving fraud. *See* Fed. R. Civ. P. 9(b). ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake . . . ."). But even under the relaxed standard of Rule 8, a claim for relief must be "plausible on its face" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A "formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557 (internal punctuation omitted)).

### III. DISCUSSION

#### A. *Claims Against Ocwen, Specialized, and Morgan Stanley*

The doctrine of res judicata, or claim preclusion, bars Cavil's suit against Ocwen, Specialized, and Morgan Stanley.[2] That doctrine "bars the

---

[2] Although Ocwen did not raise res judicata as a defense in its motion to dismiss, this Court may consider *sua sponte* whether the defense is applicable since the first suit was decided by this Court. *See Nagle v. Lee*, 807 F.2d 435, 438 (5th Cir. 1987) (noting that one of the rare circumstances in which district courts may raise the defense of res judicata *sua sponte* is "where the previous action had been brought before a court of the same district"). Moreover, Specialized and Morgan Stanley have already raised the defense. Because Ocwen is identically situated to them for purposes of res judicata, allowing it the

5

litigation of claims that either have been litigated or should have been raised in an earlier suit." *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004) (quoting *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999) (internal quotations omitted)). A party is precluded from relitigating claims when the following four elements are satisfied: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005) (citing *Petro-Hunt*, 365 F.3d at 395).

These elements are satisfied for all Defendants except the FV-1 Trust. First, Cavil sued both the Morgan Stanley LLC and Saxon, the predecessor-in-interest of both Ocwen and Specialized, in the first suit. *See Cavil*, 2012 WL 170751, at *1. Thus, both Ocwen and Specialized are in privity with Saxon for purposes of res judicata. *See Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) (stating that qualifying relationships for purposes of nonparty preclusion include "preceding and succeeding owners of property . . . and

---

benefit of the defense avoids unnecessary judicial waste. *Cf. Arizona v. California*, 530 U.S. 392, 412 (2000) ("[I]f a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte*, even though the defense has not been raised. This result is fully consistent with the policies underlying res judicata: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste." (citation and internal punctuation omitted)).

6

assignee and assignor"); *Frank C. Minvielle LLC v. Atl. Ref. Co.*, 337 F. App'x 429, 435–36 (5th Cir. 2009) (citing *Taylor* in holding that several companies that had been sold or assigned the property at issue were successors-in-interest and could benefit from the defense of res judicata). Second and third, the parties in that case consented to having the case proceed before Magistrate Judge Froeschner, who thus had competent jurisdiction when he entered a final judgment against Cavil.

Fourth and finally, the same claim was involved in both actions. The Fifth Circuit has adopted the Restatement's "transactional test" to determine claim similarity. *Petro-Hunt*, 365 F.3d at 395 (citing RESTATEMENT (SECOND) OF JUDGMENTS § 24 (1982)). "The critical issue is whether the two actions under consideration are based on the *same nucleus of operative facts*." *Id.* at 396 (emphasis in original) (quoting *Southmark*, 163 F.3d at 934 (internal punctuation omitted)).

In his first suit, Cavil (in part) asserted claims under the Real Estate Settlement Procedure Act ("RESPA"), the Texas Deceptive Trade Practice Act, and the federal Fair Debt Collection Act; and claims for usury, fraud, negligence, wrongful foreclosure, harassment, conspiracy, and breach of contract. *See Cavil*, 2012 WL 170751, at *2. Cavil now brings poorly constructed replicas of the same claims, either explicitly under the same

7

cause of action (*e.g.*, fraud, negligence, and RESPA) or styled in some more exotic fashion (*e.g.*, Freedom of Information Act). However, all of these claims are based on the same allegations: that (1) Defendants acquired an interest in the Property; (2) Defendants failed to give notice regarding the transfers of interest, both before and after the foreclosure; (3) Defendants acted without authority when they foreclosed in January 2010; and (4) Defendants failed to provide Cavil with accountings and payoff quotes. *See* Docket Entry 1-3, at 4–8 (listing alleged facts and asserted claims); Second Ammended [Sic] Petition, *Cavil v. Trendmaker Homes, Inc.*, No. G-10-304, Docket Entry No. 27 at 3–7 (S.D. Tex. Nov. 17, 2010) (listing alleged facts); *see also Cavil*, 2012 WL 170751, at *2–7. Thus, all elements of claim preclusion are met, and the judgment in the first suit has preclusive effect. All of Cavil's claims against Ocwen, Specialized, and Morgan Stanley must be dismissed.

### B.  *Claims Against the FV-1 Trust*

The same conclusion could apply to many of Cavil's claims against the FV-1 Trust, though it was not a party in the first suit, under the doctrine of collateral estoppel. But even if that doctrine, which precludes the relitigation of issues previously decided, does not apply, Cavil's claims against the FV-1 Trust must be dismissed because he has not pleaded facts

sufficient to state a claim. The Court will examine each of Cavil's claims in turn.

### i. Fraud and Negligence

For his negligence claim to survive dismissal, Cavil must plead facts allowing the Court to reasonably infer that the FV-1 Trust (1) owed him a legal duty; (2) breached that duty; and (3) its breach proximately caused him damages. *See Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009) (citation and internal quotations omitted). For his fraud claim to survive dismissal, he must plead that the FV-1 Trust (1) made a material representation to him; (2) its representation was false; (3) it made the representation as a positive assertion knowing it was false or in reckless disregard of the truth; (4) it intended Cavil to act on the representation; (5) Cavil acted in reliance on the representation; and (6) Cavil thereby suffered injury. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001) (citation omitted). Moreover, Rule 9(b) requires Cavil to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).

Cavil has not successfully pleaded either of these claims. His only allegations on point consist entirely of conclusory statements, namely that "[e]ach of the defendant[s] either negligently or fraudulently represents their legal rights and/or interest in the property, all to the determinate [sic] of the Plaintiff"; "[s]ome of the Defendants have placed fraudulent liens and fraudulent foreclosure [sic] against the property"; and "[t]he Defendants have all failed to properly give legal notice of any transfer, sale, or assignment all with the intent to defraud the defendant [sic] of his property." Docket Entry No. 1-3 at 7–8. The petition fails to plead facts that would allow the FV-1 Trust (or any other Defendant) to identify the legal duty Cavil alleges it owed him or how it breached that duty. The petition also fails to state any of the elements of fraud with particularity. Both these claims must be dismissed.

### ii.  RESPA

Cavil alleges that Defendants violated RESPA because "[n]o good faith estimate or copy thereof was received by Plaintiff disclosing all the disclosures required by . . . [RESPA]" and "the defendant [sic] Failed [sic] to give notice of the transfer to [sic] the assignment, and/or the sale the [sic] plaintiff." Docket Entry No. 1-3 at 6, 8. Assuming that Cavil is attempting to sue the FV-1 Trust under sections 2604(c), 2605(c), or 2605(e) of

RESPA, his claims fail as a matter of law because those sections apply only to mortgage lenders and servicers. *See* 12 U.S.C. §§ 2604(c); 2605(c), (e); *see also Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09-4369, 2010 WL 1424398, at *7 (E.D. La. Apr. 5, 2010) (stating that section 2605(e) applies only to a loan servicer). The FV-1 Trust was never Cavil's mortgage lender or servicer; it merely purchased the Property at the foreclosure sale. Cavil's RESPA claims must therefore be dismissed.

### iii.   Other claims

Cavil also makes claims for alleged violations of the Truth in Lending Act and its implementing regulations, Summary Statements issued by the Financial Accounting Standards Board, and the federal Freedom of Information Act. These frivolous claims may be summarily dismissed. Because Cavil's mortgage loans closed in February 2007, his Truth in Lending Act claim is barred by either that statute's one-year statute of limitations on damages claims or its three-year statute of limitations on rescission claims. *See* 15 U.S.C. §§ 1635(f); 1640(e); *Moor v. Travelers Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986). His claims for alleged violations of the Financial Accounting Standards Board's Summary Statements fail because, while the Board is recognized by the SEC and helps set nationwide accounting standards, it is a private organization, and violations of its

11

standards do not give rise to a private cause of action. Finally, his Freedom of Information Act claim fails because Defendants are not federal agencies. *See* 5 U.S.C. §§ 551(1); 552(a).

### C.  *Leave to Amend Denied*

In his response to Defendants' motions, Cavil requested leave to amend his state court petition. *See* Docket Entry No. 15 at 5–6. Under Rule 15(a), "[t]he decision to grant or deny a motion to amend is in the sound discretion of the trial court." *Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 320 (5th Cir. 1991) (citation omitted); *Whitaker v. City of Houston*, 963 F.2d 831, 836 (5th Cir. 1992). A motion to amend may be denied for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, and futility of the amendment." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (brackets omitted) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The Court concludes that Cavil's proposed amendment would be futile and would amount to undue delay because he does not justify why the amended claims were not asserted in the four pleadings he has already filed challenging the foreclosure (*i.e.*, the three pleadings he was allowed to file in

the previous case and the original petition in this case).  Cavil's two main explanations for his proposed amendment are that the state court petition was "drafted in hast [sic]" and that "all of the facts relevant to the Plaintiff[']s claims were not available at that time."  Docket Entry No. 15 at 6.  However, even if it were plausible that Cavil was unfamiliar with the facts of the case or with the identity of all the possible defendants—and, given that he has been litigating this issue for almost three years, it is not— he has not attached a proposed amended complaint to his motion or otherwise identified the new facts that he wishes to plead.[3]  *See Rosenzweig*, 332 F.3d at 865 ("Moreover, the motion to amend hardly presents any new information. . . . [P]laintiffs did not attach a proposed amended complaint, leaving the district court to speculate as to how these seemingly redundant facts might amount to a legal claim.").

    The only new claim or legal theory Cavil proposes is an attempt to collaterally attack the final judgment in the first suit and thus revive his claims against Saxon.  *See* Docket Entry No. 15 at 6.  He contends, without

---

[3] At the December 12 hearing, Cavil's counsel noted that she wished to amend to bring suit against a number of additional defendants.  However, she did not identify any of these proposed defendants or explain how she could plead claims against them when she had failed to do so against Defendants.  Nor did she explain how her old claims would not be barred by collateral estoppel if they were brought against new defendants.  Regardless, any ability to establish claims against other defendants is not a reason to keep the current Defendants, most of whom have already had to defend two lawsuits related to the foreclosure sale, in this case.

13

providing any detail, that evidence not before the court in that prior case undermines the prior ruling. This conclusory allegation is not sufficient to overcome the res judicata bar on relitigating the foreclosure dispute against Saxon. Thus, because Cavil has not proposed any new allegations that could state a legally sufficient claim against any current or new Defendant, the proposed amendment would be futile. Leave to amend is denied. *Cf.* 6 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1487 (3d ed. 2010) ("[N]umerous courts have held that a proposed amendment that clearly is frivolous, advancing a claim or defense that is legally insufficient on its face, or that fails to include allegations to cure defects in the original pleading, should be denied.").

## IV. CONCLUSION

Understandably, Cavil is not happy with the result of his first lawsuit. But mere disagreement or displeasure is not a sufficient basis for disrupting the finality of judgments in cases that were fully and fairly litigated. Defendants' motions to dismiss (Docket Entry Nos. 6; 7) therefore are **GRANTED**, Plaintiff Ben Cavil's motion for leave to amend (Docket Entry No. 15) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

**SIGNED** this 11th day of January, 2013.

_____
Gregg Costa
United States District Judge